**Weinstein License**

*Lorry Post,* for appellant.

*Edward C. Connolly,* for Commonwealth.

MONROE, J., February 3, 1970.—Troopers William H. Mahon and Andrew D. Vandzura, of the Pennsylvania State Police, were conducting a radar speed check of vehicles on July 25, 1964, at Route 322 in Dairy Township, Mifflin County, Pa., a four-lane concrete divided highway; the legal speed limit was 50 miles per hour; official signs were posted in accordance with the requirements of The Vehicle Code giving notice of the maximum speed to be observed on the highway and that radar was

in operation; the day was cloudy, the visibility was good; the roadway was straight and on a descending grade at the place of the radar speed check. The radar apparatus used by the troopers was a type approved by the Secretary of Revenue and that it was accurate is not contested.

At 12:13 p.m., a blue Dodge sedan operated by appellant passed through the radar beam and was timed at a speed of 62 miles per hour.

At the time of the violation, appellant was married and resided at 76 Black Pine Lane, Levittown, Pa., with his wife and three children. His occupation, at the time of the arrest and at the time of the hearing before us on this appeal, was divisional manager of a company publishing books and educational material. His territory was that part of the country located east of the Mississippi River, including the States of Michigan and Illinois. He was not a salaried employe, he was compensated by commissions earned on sales which he made and "overrides on commissions earned by other salesmen in his territory." He was required to travel throughout his territory by airplane transportation to the more remote areas and by operation of his car to those areas more readily accessible from his home. In the course of his duties, he averaged by operating his car from 40,000 to 50,000 miles per year over the 10 years preceding the date of the above violation. A suspension of his operating privileges would work an economic hardship upon him.

At the time of the arrest, appellant was on his way to visit his daughter, a student at Pennsylvania State University. Appellant had been driving his car on the right-hand lane of traffic traveling at approximately 50 miles an hour when he came upon a car traveling about 45 miles an hour. He accelerated his speed to

pass it, overtook and passed the preceding car on its left side and pulled back into the right lane of traffic and reduced his speed to the legal limit. As he reached the right-hand traffic lane, he passed the radar car. The Commonwealth's witnesses at the time of the hearing before us were the trooper operating the speedmeter and the arresting officer who had been stationed approximately 1,000 feet from the radar vehicle in the direction in which appellant was traveling. Neither officer contradicts appellant's statement that the violation occurred while he was in the course of making a pass of another vehicle. The arresting officer stated that he had no recollection of the traffic conditions at the time. Upon crossexamination, the answers of the trooper operating the radar were somewhat equivocal and evasive:

"Q. Do you have any present recollection of having seen the defendant's vehicle prior to its getting into the beam?

"A. Yes, sir. Where I was set up, out of my rearview mirror I could see well over a mile.

"Q. Were there any other vehicles within your view looking back that mile?

"A. Well, as I look back I just watch the car coming into the beam, I didn't notice any other vehicles.

"Q. Sitting here now do you remember this incident, trooper? Do you remember this particular case or are you just saying from your knowledge as to what usually happens how you check that?

"A. I don't remember everything, no."

The violation occurred July 5, 1964, the hearing before us was held September 17, 1965. We recognize that it would be difficult for a member of the State Police radar check teams to remember with precision the details of each arrest after that span of time. We, therefore, accept appellant's statement that the viola-

tion occurred while he was in the process of passing another vehicle.

Following the hearing before a representative of the Secretary of Revenue for the above violation, appellant was directed to take the driver's training course which was conducted each Monday evening for four consecutive weeks at the State Police Barracks, Trevose, Pa. Appellant faithfully attended this course even though his work schedule required him to be out of the Bucks County area during the entire course. On three evenings of the course, he was required to stop work in New York City, travel to the State Police Barracks in Trevose and return to New York City on the same evening. On the fourth occasion, he was in Chicago and had to return to Trevose in time to take the course. Appellant received the grade of 94, considered excellent. He was told that taking the course would not save the license, nevertheless performing adequately in it would have a great bearing in the decision to be made.

What purported to be the driving record of appellant in the secretary's files disclosed a speeding violation on December 14, 1962, which appellant admitted. It also disclosed an alleged improper passing on February 22, 1963, but appellant had no recollection of this violation or having received a warning letter from the secretary concerning it.

We recognize that the Superior Court of Pennsylvania has stated that financial hardship, the absence of previous violations of The Vehicle Code, no adverse road conditions or heavy traffic, and no recklessness of conduct involved, do not form the basis for finding an abuse of discretion on the part of the Secretary of Revenue, and that a motor vehicle operator's license may be suspended on the basis of unlawful speed alone: Dudreck Motor Vehicle Operator License Case,

214 Pa. Superior Ct. 275, 277. However, there are here considerations which induce us to reverse the order of the Secretary of Revenue suspending appellant's operating privilege.

Although the recorded speed of appellant's vehicle was 62 miles per hour, appellant was unaware that he was traveling at that speed, estimating his speed at from 55 to 57 miles per hour, his attention being directed to the maneuvering of his vehicle in accomplishing the pass on a descending grade of the highway. The violation was a momentary one, taking place while he was passing another vehicle traveling in the same direction at a rate of speed five miles below the legal speed limit. Because the radar timing device merely locks the speed of an object momentarily breaking the screen, Justice Roberts, in his concurring opinion in Commonwealth v. Bartley, 411 Pa. 286, at 296, suggests that the use of radar may deprive a momentary violator of equal protection of the law because the other means of detection of speed, prescribed in The Vehicle Code, require measured distances in determining speed which afford protection against prosecutions for momentary or inadvertent bursts of speed above the established limit. He stated:

"It would appear that the purpose of the measured stretch requirements, in addition to affording a reasonable basis for calculating speed, is also to allow for a momentary excess due to emergencies, the passing of other vehicles or even for momentary or inadvertent lapses on the part of operators who have no intention of violating the law. Surely, the Legislature did not intend by the radar amendments the unfair result of conferring immunity on a momentary violator in the one-eighth or one-quarter mile instances to the exclusion of the radar violator whose offense may also be momentary.

"The caution is obvious; the radar device must be carefully and fairly used within the sphere of its acknowledged capacity in order to avoid the challenge of lack of uniformity or other improper uses. . . ."

Furthermore, it is a matter of some uncertainty that the legislature intended to make a momentary burst of speed in excess of the prescribed limit, in order to effect a pass of another vehicle traveling below the speed limit, a violation of the speed regulations of The Vehicle Code. Compare Commonwealth v. Simons, 214 Pa. Superior Ct. 337, a case involving a radar speed check, wherein it is stated, at page 341:

"Whether the Legislature did or did not intend to make a sudden burst of speed in excess of the limit prescribed by it a violation by the foregoing provision, it did prescribe the manner in which excessive speed must be proved when it is by the following method."

This court has recognized that a momentary burst of speed beyond the limit for the purpose of effecting a pass of a slower moving vehicle may be an extenuating circumstance under certain conditions. See Vasey Automobile License Case, 15 Bucks 91; Metzger Automobile License Case, 17 Bucks 233.

Appellant had considerable inconvenience, and undoubtedly expense, in complying with the secretary's directive that he attend driver training school. His attendance could not have been perfunctory; he passed the course with excellent grades. The legislature has authorized the secretary to take this fact into consideration. The Act of 1963, P. L. 460, sec. 5, 24 PS §2905, referring to the successful completion of a driver training course, provides:

". . . If a person has received a notice of suspension and he successfully completes the course and receives a certificate indicating the same, notice thereof shall be sent to the Secretary of Revenue who shall then take

this fact into consideration in determining whether to waive the pending suspension or not. . . ."

President Judge Bane, of the Court of Common Pleas of Fayette County, in Kobaly License, 37 D. & C. 2d 98, at page 100, said:

". . . The legislation providing for such schools throughout the Commonwealth implicitly suggests the cancellation of an order of suspension upon successful completion of a course of instruction: Act of August 1, 1963, P. L. 460, sec. 5, 24 P.S. §2905. Although this power is vested in the Secretary of Revenue alone, we will regard appellant as having made expiation for his present infraction so as to bring his case within the discretionary province of the court, and we will set aside the order of suspension."

Taking into consideration the facts that the violation was momentary and occurred when appellant was passing a slower moving vehicle upon a straight, descending, divided highway, and no person or property was endangered, the facts that appellant had faithfully and attentively attended, with considerable inconvenience and expense to himself, the driver training school, passing the course with excellent marks, the fact that the suspension will cause him great financial inconvenience, it is our decision that this appeal should be sustained. We are not unmindful of the fact that appellant had a previous speeding violation a year and one-half before the instant violation and possibly a passing violation. We do not believe this to be indicative of an indifferent or inattentive driver considering the number of miles appellant had been operating his car each year.

## ORDER

And now, February 3, 1970, the within appeal is sustained, the order of the Secretary of Revenue dated July 26, 1965, suspending appellant's operating privilege for a period of one month is reversed.